Watts and
Sergeant.
4ws469
201  496

# Bunting's Appeal.

One of two executors was dismissed for refusing to give security—the other gave bond with security in $5000. They afterwards, in September 1834, settled a joint account, showing a balance due them of $352.45. In January 1838, the acting executor filed an account which was audited, and report made, of $1135.87 in his hands. In December 1840, a transcript was filed in the Common Pleas. Two of the heirs recovered judgment by *scire facias* on this transcript. To April 1841, a suit was brought on the bond, and judgment recovered. The acting executor then petitioned for a re-hearing of his accounts, stating that the credit of $352.45 to both executors was a mistake, and that if the accounts were settled separately, the balance then due him was $1719.76. *Held*, the original account of September 1834 was a final account, and could not be opened after five years, and after the different proceedings and judgments which had taken place.

APPEAL from the decree of the Orphans' Court of *Bucks* county. The case was argued by

J. *Fox*, for the appellant.
*Dubois*, contra.

The opinion of the Court was delivered by

Huston, J.—John and Charles Bunting were executors of Joseph Bunting, and settled a joint account on the 9th of September 1834. This would appear to have been on citation; for, on the 29th of April 1834, John Bunting had been dismissed from being executor on complaint duly made, and having refused to give security. On the same 29th of April 1834, Charles Bunting, in compliance with the order of the court, did give security in a bond with two sureties in the sum of $5000. By the Act 29th of March 1832, section 22, the Orphans' Court have power, on complaint made, to dismiss an executor who refuses to give security, if ordered by the court. By the 23d section, the court shall order such executor to pay over any money in his hands to his successor, and deliver over the goods, chattels, and estates in his hands. By the 24th section, the Orphans' Court have power to compel obedience to such order by attachment, with or without sequestration, or the successor may proceed at law against him and his sureties, if any such there be, or against any other person who may be possessed of any goods or chattels belonging to the estate of the decedent, or be indebted to him, or the remedies by execution and suit at law may be pursued at the same time, if the case require it, until the end be fully attained.

It was, then, the duty of Charles Bunting to proceed immediately on the dismissal of John, and recover from him any money

or property belonging to the estate of Joseph Bunting.   Instead of this, he joins John in a settlement of a joint account in September 1834.   By that account there was a balance due the executors of $352.45.   Charles, by this, exhibited to the heirs and the court what would lead to a belief that John was not liable to the estate for anything.   In January 1838, Charles, having sold the real estate, exhibited what purported to be a final account of his administration while sole executor.   It was referred to auditors, and a report showing a balance of $1135.87 in his hands.   Charles had given bond with two sureties in the sum of $5000, that he would faithfully perform the duties committed to him, and pay over moneys which had or should come into his hands according to the directions of the will, and the order of the court.

On the 9th day of December 1840, a transcript of the proceedings in the Orphans' Court of the balance found against Charles was filed in the office of the Prothonotary of the Common Pleas of Bucks county.   This, by law, became a lien on his real estate. To April term 1841, a *scire facias* to revive this lien, and to show cause why execution should not issue, was sued out by Moses Larue, guardian of some of the children of Joseph Darling.   On an appearance to this suit it was referred to arbitrators, who awarded the sum of $282.65 due to those represented by Moses Larue.   To —— term another *scire facias* was sued out by James Johnson, guardian of other children, against Charles Bunting, and a recovery by award of arbitrators for other heirs.   On this judgment a *fieri facias* issued against Charles, which was returned *nulla bona*.

To April term 1841, a suit was brought in the Common Pleas against Charles Bunting, John Paxson, and John P. Hood, his sureties on the bond given as aforesaid.   This suit also was arbitrated, and an award given against the defendants in favour of the Commonwealth for the penalty of the bond, $5000, and for the children $297.   From this award the defendants appealed, and the appeal is still pending in the Common Pleas of Bucks county.

After all this, on the 12th of November 1841, Charles Bunting, (who in his second account had taken credit for $352.45, the balance on the joint account), presented a petition to the Orphans' Court, stating, that both in the account filed by the petitioner, and in the report of the auditor, there were errors to a large amount; and it specified the error to be in this, that in the first and joint account credit was given to both executors jointly for $352.45; whereas, if the accounts of the executors had been settled separately, there would have appeared a balance due Charles Bunting of $1719.76, he having at that time paid out so much of his own money for the estate; and he insists that the actual balance due by him is only $520.04, and prays the court to grant him a re-hearing so far as to correct the alleged error.   The Orphans'

Court rejected his application, and this is an appeal from their decision.

It was stated, and not denied, that John Bunting is now become insolvent. It is also agreed that the bail of Charles Bunting shall be considered as joining in this application. I dismiss this by saying we cannot alter the law. Bail are required to make the creditors and heirs safer. Unless they are to answer for the default of their principal, it is worse than useless to require bail and take their bond.

I have cited the Act of Assembly applicable to this case, and stated the duty of Charles as to what was in the hands of John. To secure this was one of his first duties; instead of which, he joins John in putting on the record of the court a settlement calculated to deceive the court and the guardians of the minor children, and which, if his present statement is true, was totally unjustifiable. As the law then was, an account of an executor or administrator after three years, confirmed and not appealed from, was conclusive on all the world. By a late Act it is provided that in case of a petition stating a specific sum, the Orphans' Court may open the account so far as to investigate that particular matter at any time within five years after such account has been settled, with some excepted cases; as where executors have paid over money, &c. Now the account settled in September 1834, by the two executors, was a final account as to what was done by the two executors. That was settled more than five years before this application; and, unless that is opened and altered, the last account cannot be changed. The account settled by Charles is not a continuation of the account by the two executors. He acted under a distinct authority, as much so as if another person, a stranger, had been appointed when John was dismissed. The heirs could not in 1841 open that first account to charge Charles with more, nor he to make it less. But the proceedings since the last account—the filing, the transcript on the docket of the Common Pleas, the two *scire facias* litigated, reports unappealed from, and the execution and return, and the suit, references and report against Charles and his bail, afford other reasons why this matter should not be opened at this time.

Decree affirmed.